IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


IZOLA BRYANT,

      Plaintiff,

vs.                                                  Case No.  1:08cv59-MP/WCS

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____/


## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. LOC. R. 72.2(D).  It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Izola Bryant, applied for disability insurance benefits.  The administrative hearing was held on February 26, 2007.  R. 230.  Plaintiff was 43 years old at the time of the administrative hearing, R. 234, has a 11th grade education, and has past relevant work doing laundry in a hotel and housekeeping in a health care facility.  R. 84-87.

Plaintiff alleges disability due to pain, numbness, weakness in her left arm, and depression.  R. 84.

The Administrative Law Judge found that Plaintiff has the residual functional capacity to do a full range of sedentary work.  Relying upon the "grids,"[1] the ALJ determined that Plaintiff was not disabled as defined by Social Security law.  Plaintiff contends that the ALJ erred at step 5 in relying upon the "grids" because there was evidence that she was significantly limited in her ability to do sedentary work by depression.  Plaintiff seeks a remand so that evidence may be obtained from a vocational expert.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232, 1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

---

[1] Appendix 2 to Subpart P of Part 404 – Medical-Vocational Guidelines, found at: http://www.ssa.gov/OP_Home/cfr20/404/404-ap11.htm

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously

probative exhibits, to say that his decision is supported by substantial evidence

approaches an abdication of the court's 'duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662

F.2d 731, 735 (11th Cir. 1981) (citations omitted).

　　　A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122

S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

　　　The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

　　　1.　　　Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or
        equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past
        relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of

the application for benefits.  A positive finding at step three results in approval of the

application for benefits.  At step four, the claimant bears the burden of establishing a

severe impairment that precludes the performance of past relevant work.  If the claimant

carries this burden, the burden shifts to the Commissioner at step five to establish that

despite the claimant's impairments, the claimant is able to perform other work in the

national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050,

1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  Hale v.

Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Medical Evidence**

Plaintiff relies upon evidence obtained from a consultative examination by William

E. Benet, Ph.D., Psy.D., conducted on May 4, 2007.  R. 213.  Dr. Benet reported that

Plaintiff had been referred to him for "a general intellectual and personality evaluation,

memory testing, and assessment of mental functional capacity."  *Id.*  He administered

several standard tests.  *Id.*  Dr. Benet said that on arrival, Plaintiff was "an ambulatory,

severely obese, sad looking lady, using a cane, who was friendly and cooperative."  *Id.*

Her chief complaints concerned her back, feet, and ankle.  *Id.*

Plaintiff reported to Dr. Benet that "she feels depressed 'a little, sometimes,' manifested by sad, depressed mood, crying spells, and difficulty sleeping."  R. 214. She reported no change of appetite, suicidal ideation, perceptual disturbances, or loss of interest in activities that she enjoys.  *Id.*  There was no history of psychiatric or mental health treatment.  *Id.*

Plaintiff had been arrested about 3 times for fighting and possession of cocaine. R. 214.  She had never been in jail longer than overnight.  *Id.*  She denied using illegal drugs and seldom used alcohol.  *Id.*  She said she had been "kicked out of school" at age 16 for fighting.  R. 215.

Dr. Benet conducted a mental status examination and made the following findings relevant to Plaintiff's mental status:

> Mrs. Bryant was alert, oriented, severely obese 44-year-old African-American female, who was neatly dressed and groomed.  She reported that she is 5'7" tall and weighs 297 pounds.  She was ambulatory, but used a cane.  Motor activity was slow.  Speech was soft, clear, coherent and relevant.  Thinking was organized and goal directed, without suicidal ideation.  Perceptions were accurate, without hallucinations or illusions. Affect was appropriate to content and situation.  She often smiled.  Mood, however, was sad and depressed.  She did not appear to be in as much distress as she reported in regard to her back pain, which she rates as currently 8/10.  There was no repositioning of posture or visible signs of much distress during testing.  Sensorium was intact.  Attention and concentration were satisfactory.  Short-term memory was average for her age, with five digits remembered forward and three remembered backward.  Intermediate memory, however, was defective, with none of three objects remembered after five minutes.  Comprehensive memory testing and a general intellectual evaluation were performed and the results discussed below.  Mrs. Bryant's clinical presentation, manner of interaction, and verbal skills suggested low-average general intellectual ability.  Judgment appeared to be adequate.  Insight was limited.

R. 215.

Dr. Benet said that the Plaintiff's test results of the Wechsler Memory Scale-III "showed no indications of significant relative impairment in memory functioning."  R. 216.  Dr. Benet said that the results of the Minnesota Multiphasic Personality Inventory-2 were consistent with an individual "likely to be preoccupied with their health and physical functioning and experiencing moderate depression."  *Id.*  He also said that the elevated results on scale 5 "is associated with social aggression and low feminine identification in women.  This may reflect a history of aggressive behavior that Mrs. Bryant reported which included several arrests for fighting."  *Id.*  Dr. Benet said that "[o]therwise, Mrs. Bryant's profile showed no indications of severe psychopathology or severe personality maladjustment."  *Id.*  Dr. Benet concluded:

> Mrs. Bryant should be able to perform work-related mental tasks, as her physical condition permits, involving understanding and memory, *with mild to moderate limitations in her ability to perform tasks involving sustained concentration and persistence, social interaction and adaptation due to chronic pain and depression.  Improvement may be expected with appropriate treatment of depression and effective pain management*.

R. 216 (emphasis added).  Dr. Benet's diagnosis on Axis I was depressive disorder NOS 311, and on Axis 5,[2] a GAF score of 60.[3]  He concluded:  "Medical/psychological treatment of depression with pain management is recommended."  R. 217.

Dr. Benet then filled out a form entitled "Medical Source Statement of Ability to Do Work-related Activities (Mental)."  R. 220.  The form defined a "mild" limitation as "a

---

[2] Axis V of the DSM-IV Multiaxial System and the meaning of the GAF scores is explained at:  http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

[3] "The GAF scale reports a 'clinician's assessment of the individual's overall level of functioning.'  *American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders* 30 (4th ed. 1994)."  Sims v. Barnhart, 309 F.3d 424, 427 n. 5 (7th Cir. 2002).

slight limitation in this area but the individual is still able to function satisfactorily." *Id.*

The form defined a "moderate" limitation as "more than a slight limitation in this area but

the individual is still able to function satisfactorily." *Id.*

Dr. Benet found that Plaintiff had no limitation in her ability to understand,

remember, and carry out instructions.  R. 220.  He found that Plaintiff had a "moderate"

limitation in ability to interact appropriately with the public, with a supervisor, and with a

co-worker, and to respond appropriately to usual work situations and to changes in a

routine work setting.  R. 221.  Dr. Benet said that this moderate limitation was due to

Plaintiff's history of aggressive behavior "in school and afterwards as an adult which

resulted in arrests." *Id.*  He said that her MMPI profile indicated that "social aggression

may be a persistent problem." *Id.*

On April 18, 2007, Christopher M. Leber, M.D., performed a consultative physical

examination of Plaintiff.  R. 109.  Among his several findings, he found that Plaintiff

"appears functional regarding *concentration*, persistence, *social interaction*, and

adaptation, as well as understanding and memory."  R. 201 (emphasis added).

**Legal Analysis**

The issue presented is whether the ALJ properly relied upon the "grids" at step 5

to determine whether there are any jobs in the national economy that Plaintiff can do,

given her residual functional capacity.  Plaintiff points out that the ALJ determined at

step 2 that Plaintiff's depressive disorder was a "severe" impairment, but implicitly

concluded that her experience of depression does not significantly affect her residual

functional capacity.  Plaintiff argues that Dr. Benet's findings compel the conclusion that

Plaintiff's residual functional capacity is significantly limited by her depression, and that,

as a consequence, she cannot do a full range of sedentary work.  Plaintiff argues that reliance upon the "grids," therefore, was error, and that the case should be remanded to obtain testimony from a vocational expert.

The "grids" may be used by the Commissioner "only when each variable on the appropriate grid accurately describes the claimant's situation."  Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987).  "Exclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that *significantly* limit basic work skills."  Phillips v. Barnhart, 357 F.3d 1232, 1142 (11th Cir. 2004) (emphasis added, citation omitted).  The issue, therefore, is whether the ALJ should have found from Dr. Benet's findings that Plaintiff's depression "significantly" limits her basic work skills.

The ALJ discussed the findings of Dr. Benet, and concluded that he "found moderate social functioning problems but the claimant *was able to function satisfactorily*."  R. 14 (emphasis added).  This finding is supported by substantial evidence in the record.  Dr. Benet found that Plaintiff has only "moderate" limitations in ability to interact appropriately with the public, with a supervisor, and with a co-worker, and to respond appropriately to usual work situations and to changes in a routine work setting.  R. 221.  The form defined a "moderate" limitation as "more than a slight limitation in this area but the individual is still able to function satisfactorily."  R. 220.  Dr. Benet was more concerned about Plaintiff's aggressive behaviors in the past, rather than her depression, and he did not mention depression as a limiting factor in his concluding paragraph.  R. 221.  Further, Plaintiff has had no treatment for depression.

Dr. Benet felt that the depression he detected would improve with treatment for depression and pain.  Finally, he assigned a current GAF score of 60, which is the transition score from moderate to mild limitations.[4]  These findings are consistent with the finding of Dr. Leber, in April 2007, that Plaintiff appeared to be functional with respect to concentration and social interaction.  R. 201.  The ALJ did not err in his reliance upon the "grids" because there was substantial evidence in the record to support his implicit conclusion that Plaintiff's experience of depression does not significantly limit her basic work skills.

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record.  The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on March 16, 2009.

s/   **William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] A GAF score of 51-60 indicates: "Moderate symptoms ( e.g., flat affect and circumstantial speech, occasional panic attacks ) OR moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or co-workers).  A GAF score of 61-70 indicates: "Some mild symptoms ( e.g., depressed mood and mild insomnia ) OR some difficulty in social occupational, or school functioning ( e.g., occasional truancy or theft within the household ), but generally functioning pretty well, has some meaningful interpersonal relationships."  *See* http://psyweb.com/Mdisord/DSM_IV/jsp/Axis_V.jsp.

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

Case No. 1:08cv59-MP/WCS